People, Plaintiff and Appellee, *v.* Colón, Defendant and Appellant.

Appeal from the District Court of Ponce in a Prosecution for Burglary.

No. 1920.—Decided May 9, 1922.

Burglary—Evidence.—The fact that a clearly inadmissible question put by the district attorney to a witness is admitted does not justify the defendant in offering evidence also inadmissible in opposition.

Id.—Instruction to Jury.—An instruction given to a jury with regard to burglary is not ambiguous when it states clearly that in order that the crime may exist the defendant must have had the intention to commit theft or larceny before entering the house.

Id.—Intent.—Where the defendant had a right to enter the house wherein the burglary was alleged to have been committed a previous criminal intent can not be inferred from the mere act of his entering the house.

The facts are stated in the opinion.

*Mr. L. Tormes* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

Mr. Chief Justice del Toro delivered the opinion of the court.

Ricardo Colón was charged with having entered, late on the night of September 3, 1921, the home of Angelina Pacheco in Ponce with the intention of committing larceny. He pleaded not guilty. The case was tried to a jury who found him guilty of burglary in the first degree and the court sentenced him to serve three years in the penitentiary. He appealed to this court and assigned in his brief the commission of three errors.

1. The first assignment is based on the refusal of the court to admit in evidence the record of a certain criminal prosecution. From the transcript it appears that the defendant testified in his own behalf and the district attorney cross-examined him as follows:

"Is it not true that on that night you set fire to the clothes of a prostitute? It is not true.

"The defendant's attorney then said: I want to call the clerk

with the record of the criminal prosecution against Ricardo Colón for burglary and incendiarism.—District Attorney: I object.—Defense: I intend to produce evidence that he did not enter a house with the intention of setting fire to it.—Judge: That has nothing to do with this case. The court refuses to admit the evidence.— Defense: The evidence that we offer is as follows: This defendant was cross-examined by the district attorney as to whether he had been prosecuted for setting fire to a house or a room of it on the same night to which the information in this case refers. The defense offers in evidence the record of criminal case No. 5594, reported as not a true bill by the grand jury who investigated the said case as to the acts attributed to the defendant. The district attorney objected.—The court sustained the objection and the defendant's attorney took exception.—Judge: The court now instructs the jury that this document has not been admitted in evidence and you must efface from your minds all trace of what has been said concerning this record. You should not consider it at all.''

The question of the district attorney on cross-examination was clearly improper. The defense did not object to it and we think that it did not of itself constitute an error prejudicial to the defendant. The evidence offered by the defendant was also manifestly erroneous. Section 23 of the Law of Evidence is not applicable. The district attorney did not offer in evidence any part of an act, declaration, conversation or writing. He simply went too far in asking a question which was answered negatively by the defendant, and the fact that he did so did not justify the defendant in doing the same. Under the circumstances we do not think the court erred.

2. It is contended that the court erred in instructing the jury as follows:

''Now, the definition of the crime of burglary as given in our Penal Code—and you must strictly consider that only—is that a person who enters such a house or other building as the code names —who goes into such a house—and it does not say the house of another, but merely any house whatever,—with intent to commit larceny, or any felony, is guilty of burglary; and although a per-

son may have a right to enter the house, this does not alter or affect the question. If a person enters a house and before entering he had the intention of committing larceny, he is guilty of burglary. * * * If there is a reasonable doubt as to his guilt, you should find him not guilty. But you need not consider as an element of the crime whether or not the defendant had a right to enter that house because a part of the house was occupied by a woman with whom he slept and he went in and out whenever he pleased. That is a question which you must bear in mind and in your deliberation you should fully consider it in determining whether in entering the house the defendant had the intention of committing larceny. That is the essence of this crime; the intention of the defendant upon entering the house, and it is necessary that this element of the crime be established beyond a reasonable doubt in order that a conviction, a verdict of guilty, may be justified. A person may enter a store open to the public. Any person has a perfect right to enter a store open to the public where goods are offered for sale. If a person enters the store and it is not shown that he had the intention of stealing when he entered, but only that after he was inside he saw money inadvertently left upon the counter or underneath some cloth, as is apt to happen, and yielding to temptation he takes that money and puts it in his pocket, that would be larceny. He entered the place to purchase something; there is no evidence that he knew that the money was there and he did not enter with the intention of taking the money, but while inside the store he found the money and took it. This is larceny. But if that person is standing on the sidewalk in front of a store and, seeing that there is some cloth or something else on the counter, he waits outside for an opportunity when the clerks are busy or not looking and enters and takes something, then you have evidence enough to justify the conclusion that upon entering the store he already had the intention of committing larceny. In this case the law does not require direct evidence of the intent; the intent is nothing but a mental condition of the defendant, and this is inferred and deduced from all the facts and circumstances. It is indispensable that this be established, but not necessarily by direct evidence. If from all the facts and circumstances of this case you believe that the defendant entered the house in question with the intent, already formed at the time of entering, of committing larceny, then this essential element of the crime has been established.''

We are of the opinion that the trial judge instructed the jury correctly on the law. All depends upon the intent and the time when it is conceived. We shall merely refer to a decision of the Supreme Court of Alabama, cited in every treatise which we have consulted and constituting authority on the point. The syllabus thereof is as follows:

"A servant and office boy of an attorney-at-law, intrusted with the key of the front door of the office, and entering at night by using the key, with intent to steal, the attorney sleeping, according to custom, in an inner room, is guilty of burglary, but not so if the boy is in the habit of sleeping in the office, to the knowledge of his employer, and enters to go to bed, and after entering forms the design to steal." *Lowder* v. *State*, 35 Am. Rep. 9.

3. The third assignment of error refers to the evidence. We have examined it and in our opinion it clearly discloses the following: Angelina Pacheco had rented a small house in Ponce for the monthly sum of $2.50. The house was divided into two rooms. The only outer door led directly into the room occupied by Angelina and another inside door gave passage to the room which Angelina had sublet to Elena Rodríguez. The latter was the mistress of defendant Enrique Colón who visited her frequently, sleeping there and contributing to the payment of the rent.

On the night of September 3 Angelina and Elena went to a theater and left the house door closed with a padlock which had no key. They returned about ten o'clock and noticed that some eight yards of cloth and a pair of white trousers belonging to a brother of Angelina were missing.

It was fully established that the defendant stole the cloth and the trousers. They were found in his possession. He alleged that he had purchased them from the owner, but his allegation was unsupported. Of this, we repeat, there is no doubt. The doubt is as to the time when the defendant conceived the criminal design.

The first witness for the prosecution was Angelina Pacheco.  We transcribe a part of her testimony as follows:

"When you rented that house did you do it alone or together with the other woman?—With my friend.—Who was your friend?— Elena Rodríguez.—And this man, was he the husband of Elena Rodríguez?—The paramour of Elena Rodríguez.—Then, did he have a right to enter the house?—Yes, because he paid for her room.—Did he or did he not have a right to enter the house?—He had a right to enter her room.—But in order to enter her room, did he have to pass through yours?—Yes.—Did the padlock have a key?—The key had been lost.—How could the house be entered when you were not there?—By pulling out the staple that held the lock.—At what hour on that day did you last see this man there?—The last time was between eight and nine o'clock.—Where did you leave him?— He had gone away.—Did he leave the house before you did?—As he had quarreled with her on account of jealousy, he had gone away.—How many trunks were there in the house?—Only my trunk; she had none.—Did this man have any clothing in the house?— Yes, he had some clothing which she kept.—Was there any of this man's clothing in your trunk?—On the day they quarreled she put his clothing in my trunk and said: 'Let me put these three garments here so that he may take them.'  This was when she was about to leave."

For what purpose did Colón return to the house of his mistress on the night of September 3?  In order that he could be convicted of burglary it would be necessary to show that upon entering the house he already had the intention of committing the theft.  If the design was formed after he was in the house, he could be convicted of larceny, but not of burglary.

An inquiry into the truth is complicated by the theory of the defendant.  He goes too far in maintaining that he committed no criminal act.  But at all events, after scrupulously analyzing the evidence we do not find in it elements sufficient to justify concluding beyond a reasonable doubt that the defendant entered the house with the intention to commit the theft.  This is not an ordinary case of burglary in which

from the mere fact of being within the house or business place of another the intent of the defendant may be inferred. Here the defendant had a right to enter the house; therefore, criminal intent can not be inferred from the mere fact of his entering the house. And considering that his entry is also explained by the fact that he had quarreled with his mistress and returned to the house to get his clothing, a conviction is impossible.

In our opinion the intent of the defendant to steal the cloth and trousers was formed within the house while he was taking what rightfully belonged to him from the trunk wherein everything was kept.

That being the case it is necessary to conclude that the error last assigned was committed; therefore, the judgment appealed from must be reversed and defendant discharged.

*Reversed.*

Justices Wolf, Aldrey, Hutchison and Franco Soto concurred.